Joseph N. Casas [CSB No. 225800]
**TALENT RIGHTS LAW**
The Casas Law Firm, PC
8383 Wilshire Blvd., Suite 800
Beverly Hills, CA 90211
T: (855) 267-4457 | F: (855) 220-9626
joseph@talentrights.law
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY S. STANFIELD, an individual,<br><br>Plaintiff,<br><br>v.<br><br>COOPER STREET, LLC d/b/a ROMPERJACK; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>PLAINTIFF'S COMPLAINT FOR:<br><br>(1) False Endorsement, 15 U.S.C. § 1125(a)(1)(A);<br>(2) Violation of California Civil Code § 3344;<br>(3) Common Law Right of Publicity;<br>(4) False Light Invasion of Privacy; and<br>(5) Unfair Competition, Cal. Bus. & Prof. Code § 17200 et seq.<br><br>Jury Trial Demanded |

Plaintiff Jeffrey S. Stanfield alleges as follows:

## INTRODUCTION

1. Plaintiff Jeffrey S. Stanfield is a professional model and actor who earns income by licensing his image, likeness, identity, and performance to commercial brands. Defendants used those valuable rights to sell RomperJack clothing without his consent.

2. In or about January 2021, Mr. Stanfield participated in a still-photography session outdoors near the Santa Monica Pier in Los Angeles County, California,

involving RomperJack apparel. The session was arranged through a friend and photographer Samir Janjua. Mr. Stanfield had no direct communications with RomperJack, signed no model release, made no oral agreement granting usage rights, and received no cash compensation. He received clothing and copies of photographs from the session.

3. Years later, RomperJack used Mr. Stanfield's photographs in commercial social-media advertisements and transformed them into artificial-intelligence-generated images and video. The new advertisements changed his appearance, placed him into fabricated settings and performances, and simulated movement, gestures, and facial expressions that he never recorded.

4. The advertisements expressly promoted RomperJack products. One directed viewers to 'OWN THE STYLE. SHOP THE ROMPER NOW.' Another asked, 'Tired of the same old summer outfit?' and directed viewers to 'Meet your one-piece upgrade.' Mr. Stanfield's identity was the commercial vehicle used to sell the clothing.

5. RomperJack's owner, Emmanuel Sullivan, has stated that he acquired RomperJack in January 2025 and further acknowledged in correspondence that the artificial-intelligence enhancements were created after that acquisition. The challenged synthetic content therefore was not an inherited 2021 photograph passively maintained in an archive. It was new advertising created and published by the current operation.

6. Mr. Stanfield never consented to the commercial uses alleged here, and he never authorized anyone to generate a digital performance or derivative advertising content from his likeness. This action seeks compensation and injunctive relief for Defendants' unauthorized commercial exploitation of his identity and the false impression that he endorsed and participated in the challenged advertisements.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Plaintiff's federal claim under 28 U.S.C. §§ 1331 and 1338(a) and (b), and 15 U.S.C. § 1121, because that claim arises under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

8. This Court has supplemental jurisdiction over Plaintiff's California statutory and common-law claims pursuant to 28 U.S.C. § 1367(a), because all claims arise from the same course of unauthorized advertising conduct and form part of the same case or controversy under Article III of the United States Constitution.

9. This Court has specific personal jurisdiction over Defendant Cooper Street, LLC based on its own post-acquisition commercial conduct directed toward California and this District. That conduct includes offering RomperJack products for sale to California customers through its online store and using Mr. Stanfield's identity in commercial advertisements distributed to California consumers.

10. RomperJack accepts online orders from California customers, ships its products into California in the ordinary course of business, and uses national digital advertising to solicit customers in California. Upon information and belief, Defendants have completed sales to customers in this District, and the details of those transactions are within Defendants' possession and control.

11. The source photographs were created in California. The January 2021 session took place outdoors near the Santa Monica Pier in Los Angeles County, was arranged through a Los Angeles-area commercial photographer, and depicted Plaintiff, a California model and actor. After Cooper Street, LLC acquired RomperJack, it selected and transformed those photographs for the challenged advertisements.

12. After acquiring RomperJack, Defendants deliberately selected, repurposed, and transformed those California-connected photographs into new advertising. Defendants published the advertisements through commercial social-media

accounts and an online business that solicits and serves California customers. This action arises directly from those contacts.

13. No later than their receipt of Mr. Stanfield's June 23, 2026 demand letter, Defendants were on notice that he asserted California statutory and common-law publicity rights arising from the challenged uses. Defendants nevertheless denied liability and failed to compensate him for the completed uses. Defendants' conduct caused injury to Mr. Stanfield's professional reputation, licensing market, and publicity rights in California.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred here, including the outdoor photography session near the Santa Monica Pier in Los Angeles County that produced the photographs Defendants later used, delivery of the challenged advertising into this District, and injury to a Los Angeles County resident's professional business and licensing market here.

15. This action is properly assigned to the Western Division because Mr. Stanfield resides in West Hollywood, Los Angeles County, and substantial suit-related events and injuries occurred in Los Angeles County.

16. Exercise of personal jurisdiction over Defendants in this District comports with traditional notions of fair play and substantial justice and does not offend due process.

## PARTIES

17. Plaintiff Jeffrey S. Stanfield ("Plaintiff" or "Mr. Stanfield") is an individual residing in West Hollywood, Los Angeles County, California. He is a professional model and actor who licenses his image, likeness, identity, and performance for commercial use.

18. Defendant Cooper Street, LLC is a Texas limited liability company formed on November 6, 2024. It does business as RomperJack and, upon information and belief, operates or controls the romperjack.com online store and RomperJack

social-media accounts. The identities and citizenship of Cooper Street, LLC's members are presently unknown to Plaintiff.

19. Defendants Does 1 through 10 are persons or entities whose identities are presently unknown and who created, commissioned, placed, distributed, funded, controlled, or benefited from one or more of the challenged advertisements. Plaintiff sues these defendants by fictitious names and will identify them through discovery.

20. At all relevant times, each Defendant acted as an officer, manager, employee, agent, affiliate, contractor, principal, or participant of one or more of the other Defendants, within the scope of that relationship, and authorized, participated in, or ratified the conduct alleged here.

## FACTUAL ALLEGATIONS

### A. Mr. Stanfield’s Profession and the Value of His Identity

21. Mr. Stanfield is a professional model and actor. At the time he discovered Defendants’ advertisements, he was appearing in three national advertising campaigns, including two commercials and one print campaign.

22. Mr. Stanfield’s image, likeness, identity, and performance are commercial assets. His ordinary modeling day rate is approximately $2,500. Depending on the scope, duration, media, territory, and exclusivity of a negotiated license, his prior commercial usage fees have ranged from approximately $2,500 to $10,000.

23. Mr. Stanfield must control the brands, products, messages, and creative treatments with which his identity is associated. Unauthorized advertising can create conflicts with existing or prospective campaigns, cause viewers and industry professionals to believe he approved a brand relationship that he did not approve, and impair the market value of his identity.

24. Mr. Stanfield is readily identifiable in the challenged content. The artificial-intelligence-generated images preserve his face, body, clothing, pose, and

other distinctive characteristics from the source photographs, even where Defendants changed the setting, expression, movement, or apparent performance.

**B. The 2021 Still-Photography Session**

25. In or about January 2021, Mr. Stanfield participated in a still-photography session outdoors near the Santa Monica Pier in Los Angeles County, California, involving RomperJack apparel. His friend arranged the opportunity through photographer Samir Janjua, a Los Angeles-area commercial photographer. Screenshots of photographs from that session are attached as Exhibit A.

26. Mr. Stanfield was not personally solicited by RomperJack. He exchanged no email, text message, direct message, or other communication with RomperJack before or during the session.

27. Mr. Stanfield likewise made no oral agreement with Mr. Janjua concerning RomperJack's use of his identity. He did not sign a model release, license, waiver, work-for-hire agreement, or other writing granting RomperJack a right to use his image or likeness.

28. Mr. Stanfield received no cash payment. He received clothing and copies of photographs from the session. Neither item conveyed a perpetual advertising license or consent to create synthetic or derivative performances.

29. No person asked Mr. Stanfield for permission to animate the still photographs, change his appearance, fabricate new settings or conduct, or create artificial-intelligence-generated video advertisements depicting him.

30. Even if Defendants could prove some narrow implied permission to use one or more original still photographs in connection with the 2021 session, which Plaintiff denies, that permission would not include later republication by a new owner in new campaigns, the creation of synthetic derivative content, or the fabrication of an audiovisual performance Mr. Stanfield never gave.

**C. Defendants' Acquisition and Post-Acquisition Control**

31. RomperJack, through its owner Emmanuel Sullivan, represented that the business was acquired from Justin Clark in January 2025.

32. Upon information and belief, Cooper Street, LLC owns and operates RomperJack and controls its commercial website, social-media accounts, advertising accounts, customer data, and brand assets.

33. After the acquisition, Defendants had control over whether inherited photographs would be used, removed, relicensed, altered, or transformed into new advertisements. Defendants could have requested a written release from Mr. Stanfield before using his identity. They did not.

34. Defendants instead selected photographs depicting Mr. Stanfield and caused new advertising materials to be created from them. RomperJack, through Mr. Sullivan, acknowledged in correspondence that the artificial-intelligence enhancements were created after the acquisition.

35. Defendants therefore cannot attribute the challenged synthetic advertisements solely to a predecessor's historical conduct. The selection, transformation, publication, and commercial use alleged here occurred under Defendants' present control.

**D. The Challenged Commercial Advertisements**

36. After Cooper Street, LLC acquired RomperJack, Defendants published advertisements through RomperJack's commercial social-media accounts using Mr. Stanfield's identity to promote and sell RomperJack apparel. Mr. Sullivan acknowledged that a RomperJack Instagram post depicting Mr. Stanfield appeared on June 13, 2025.

37. One challenged Instagram advertisement used an artificial-intelligence-generated depiction of Mr. Stanfield and another model against a fabricated beach setting. The advertisement stated, 'OWN THE STYLE. SHOP THE ROMPER NOW.' A screenshot of that advertisement is attached as Exhibit B.

38. A separate challenged Instagram advertisement used an artificial-intelligence-generated, full-body depiction of Mr. Stanfield alone. The advertisement stated, ‘Tired of the same old summer outfit?’ and ‘Meet your one-piece upgrade.’ A screenshot of that advertisement is attached as Exhibit C.

39. The second advertisement placed Mr. Stanfield into a fabricated beach scene and altered details of his body, pose, facial expression, lighting, and surrounding environment while retaining his readily identifiable face, physique, clothing, and persona.

40. Defendants also published or caused to be published artificial-intelligence-generated video advertising derived from the still photographs. The video placed Mr. Stanfield into simulated motion and created new facial expressions, gestures, and audiovisual conduct that did not occur during the 2021 still-photography session. A still image identified as from that video is attached as Exhibit D.

41. The video depicted Mr. Stanfield in fabricated movements and reactions to another speaker. Mr. Stanfield had not recorded a performance for that advertisement. The video conveyed that he had participated in a current RomperJack advertising campaign when he had not.

42. The source photographs and the challenged advertisements are not the same works. Defendants used generative tools to create new scenes and performances from Mr. Stanfield’s identity and then presented the synthetic output as commercial advertising.

43. The advertising use was direct and unmistakable. The challenged posts displayed RomperJack’s account name, showed RomperJack apparel, used sales-oriented copy, and invited viewers to purchase the products.

44. Defendants received a commercial benefit from using Mr. Stanfield’s identity, including the avoided cost of hiring and compensating a model for the new campaign, the avoided cost of negotiating a synthetic-media license, attention

and engagement generated by his image, and sales or prospective sales of the advertised products.

45. Upon information and belief, Defendants distributed the challenged content through Instagram, Facebook, and other digital channels, including paid or boosted advertising, and used the content to drive traffic to RomperJack's online store. The full duration, targeting, impressions, advertising spend, engagement, and resulting revenue are within Defendants' possession and control.

**E. Mr. Stanfield Did Not Consent**

46. Mr. Stanfield did not authorize any Defendant to use his photograph or likeness in the challenged advertisements.

47. Mr. Stanfield did not authorize any Defendant to use artificial intelligence or another automated tool to modify, animate, repurpose, or generate derivative content from his face, body, performance, photographs, or likeness.

48. Mr. Stanfield did not authorize Defendants to portray him as moving, endorsing RomperJack, or participating in a new advertising campaign.

49. Defendants have produced no signed release from Mr. Stanfield. Their assertion that a photographer reported a verbal arrangement does not identify any words spoken by Mr. Stanfield, any duration, territory, medium, product, compensation term, or grant of synthetic-media rights. Mr. Stanfield denies that any such agreement existed.

50. A purported verbal understanding for clothing and photographs in exchange for some use of original still images would not authorize the post-acquisition creation of artificial-intelligence-generated images, fabricated video performances, or new commercial advertisements years later.

**F. Notice, Admissions, and Ratification**

51. On June 23, 2026, Mr. Stanfield, through counsel, notified RomperJack of the unauthorized uses and demanded that it stop using his identity, preserve the

relevant records, provide an accounting, produce any claimed release, and compensate him.

52. RomperJack, through Mr. Sullivan, responded that the business was acquired in January 2025 and that it had relied on materials inherited from the prior owner.

53. RomperJack further acknowledged through Mr. Sullivan that the artificial-intelligence enhancements were created after the acquisition. That admission places the creation of the synthetic advertising within the period of the current operation's ownership and control.

54. Defendants did not produce a signed release, an email from Mr. Stanfield granting usage rights, a text message granting usage rights, or any other communication in which Mr. Stanfield authorized the challenged content.

55. Defendants represented that they removed challenged materials after receiving notice. Removal after notice does not compensate Mr. Stanfield for completed commercial uses, eliminate consumer confusion already created, or account for copies, placements, impressions, engagement, and revenue generated before removal.

56. Defendants retained the source photographs, the generated assets, and control over the advertising and social-media accounts. Without injunctive relief and an accounting, Mr. Stanfield cannot determine whether every challenged placement, derivative, duplicate, audience, and third-party distribution has ceased.

**G. Injury**

57. Defendants deprived Mr. Stanfield of the fair market value of the commercial and synthetic-media licenses they took without permission or payment.

58. Defendants' advertisements falsely represented that Mr. Stanfield endorsed RomperJack and participated in the creation of its current advertising campaign.

59. The fabricated images and audiovisual performance interfered with Mr. Stanfield's right to control the products, messages, performances, and brands associated with his professional identity.

60. At the time of the challenged uses, Mr. Stanfield was appearing in three national advertising campaigns. Unauthorized and uncontrolled brand associations create a material risk of conflicts, dilution, professional confusion, and lost licensing opportunities.

61. Mr. Stanfield suffered injury to his professional reputation, commercial licensing market, and peace of mind. He was placed in the position of having fabricated conduct attributed to him without his knowledge or approval.

62. The full extent of Defendants' profits and Mr. Stanfield's damages cannot be determined until Defendants account for the duration, reach, targeting, placements, impressions, clicks, conversions, sales, advertising spend, generated variants, and use of third-party agencies and platforms.

## FIRST CLAIM FOR RELIEF

### False Endorsement and False Association

(15 U.S.C. § 1125(a)(1)(A), Against All Defendants)

63. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth here.

64. Section 43(a)(1)(A) of the Lanham Act imposes liability on a person who, in connection with goods or services, uses in commerce a name, symbol, device, or combination thereof that is likely to cause confusion, mistake, or deception concerning affiliation, connection, association, sponsorship, or approval.

65. Mr. Stanfield has a protectable commercial interest in his identity. He works professionally as a model and actor, appears in national advertising campaigns, and licenses his image, likeness, and performance for commercial use.

66. Defendants used Mr. Stanfield's readily identifiable likeness in commerce as the central visual and audiovisual content of advertisements selling RomperJack products.

67. The challenged advertisements were likely to cause viewers to believe that Mr. Stanfield modeled for, participated in, sponsored, approved, or endorsed RomperJack's current campaign. The use involved the same type of commercial modeling and apparel advertising for which Mr. Stanfield licenses his identity.

68. The likelihood of confusion was heightened by Defendants' use of synthetic images and video that portrayed Mr. Stanfield as having performed for the campaign, rather than merely reproducing a historical editorial image.

69. Mr. Stanfield did not endorse or approve the challenged advertisements. As a direct and proximate result, he has suffered damage and is entitled, subject to the principles of equity, to Defendants' profits, his damages, costs, injunctive relief, and the other remedies authorized by 15 U.S.C. §§ 1116 and 1117.

**SECOND CLAIM FOR RELIEF**

**Violation of California Civil Code § 3344**

(Against All Defendants)

70. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth here.

71. California Civil Code § 3344 imposes liability on a person who knowingly uses another's name, voice, signature, photograph, or likeness on or in products, merchandise, or goods, or for purposes of advertising or selling, without prior consent.

72. Defendants knowingly used Mr. Stanfield's photograph, likeness, and identity for the purpose of advertising and selling RomperJack products.

73. The use was knowing because Defendants intentionally selected photographs depicting Mr. Stanfield, intentionally generated or commissioned new

advertising assets from those photographs, and intentionally published the resulting content through RomperJack's commercial accounts.

74. Mr. Stanfield was readily identifiable in each challenged use. The artificial-intelligence generation did not remove his identity. It appropriated and transformed it while preserving the features necessary for viewers to recognize him.

75. Mr. Stanfield did not give prior consent. He signed no release and made no oral agreement authorizing the uses. No claimed permission for historical still photographs would extend to the new synthetic images, video performance, settings, or post-acquisition campaigns alleged here.

76. There was a direct connection between Defendants' use of Mr. Stanfield's identity and Defendants' commercial purpose. The posts displayed and promoted the clothing, directed viewers to shop, and used Mr. Stanfield as the model for the products being sold.

77. Defendants' conduct caused injury, including loss of licensing value, loss of control over commercial associations, professional and reputational harm, and the appropriation of value that otherwise would have required compensation.

78. As a direct and proximate result, Mr. Stanfield is entitled under California Civil Code § 3344 to the greater of the statutory minimum or his actual damages, all profits attributable to the unauthorized uses that are not taken into account in computing actual damages, punitive damages, attorney's fees and costs, and all other available remedies.

## THIRD CLAIM FOR RELIEF

## Common Law Right of Publicity

(Against All Defendants)

79. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth here.

80. Defendants used Mr. Stanfield's identity and appropriated it to their commercial advantage by using his readily identifiable likeness and simulated performance to advertise and sell RomperJack products.

81. Defendants acted without Mr. Stanfield's consent. He granted no right to create, publish, or commercially exploit the challenged still images, synthetic derivatives, videos, movements, or current-campaign endorsement.

82. The common-law tort protects identity, not merely an unaltered photograph. Defendants cannot avoid liability by using artificial intelligence to transform the source photograph while retaining and exploiting the identity that gives the advertisement its value.

83. Mr. Stanfield suffered resulting injury, including the fair market value of the uses taken, injury to his professional reputation and licensing market, lost control over the commercial exploitation of his identity, and other damages according to proof.

84. Defendants acted willfully, oppressively, fraudulently, or with conscious disregard of Mr. Stanfield's rights, supporting an award of punitive damages according to proof.

## FOURTH CLAIM FOR RELIEF

## False Light Invasion of Privacy

(Against All Defendants)

85. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth here.

86. Defendants gave publicity to depictions that placed Mr. Stanfield before the public in a false light by representing that he participated in, performed for, and endorsed RomperJack's current advertising campaign.

87. The synthetic video and images attributed to Mr. Stanfield movements, expressions, settings, and audiovisual conduct that he did not perform, record, or approve.

88. The false light was highly offensive to a reasonable person, particularly a professional model and actor whose livelihood depends on controlling his performances, endorsements, professional conflicts, and brand associations.

89. Defendants knew the depictions were generated from historical still photographs rather than from a current performance by Mr. Stanfield, or acted in reckless disregard of that fact and of whether he had consented.

90. The challenged content was commercial advertising, not news, commentary, public affairs, sports reporting, or another protected report of a matter of public interest.

91. As a direct and proximate result, Mr. Stanfield has suffered professional, reputational, emotional, and economic harm in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**

**Unfair Competition**

(Cal. Bus. & Prof. Code § 17200 et seq., Against All Defendants)

92. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth here.

93. California Business and Professions Code § 17200 defines unfair competition to include any unlawful or unfair business act or practice.

94. Defendants' conduct was unlawful because it violated California Civil Code § 3344, California's common-law right of publicity, and section 43(a) of the Lanham Act.

95. Defendants' conduct was also unfair. Defendants took historical photographs of a California model who had never signed a release, transformed them into new synthetic commercial content, attributed a fabricated performance and endorsement to him, and used the resulting advertisements to sell products without negotiating or paying for the rights taken.

96. Mr. Stanfield lost money or property as a result, including the license fees and commercial value Defendants took without payment and the value of his exclusive right to control the commercial use of his identity.

97. Defendants acquired money, benefits, cost savings, and commercial value through the unauthorized use. Mr. Stanfield is entitled to restitution of amounts in which he has an ownership interest and to injunctive relief under California Business and Professions Code § 17203.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. That the Court enter judgment in favor of Plaintiff and against Defendants, and each of them, on each claim for relief;

2. That Plaintiff be awarded his actual and compensatory damages according to proof at trial;

3. That, on the Second Claim for Relief, Plaintiff be awarded the greater of the statutory minimum or his actual damages, together with all profits attributable to the unauthorized uses that are not taken into account in computing actual damages, pursuant to California Civil Code § 3344;

4. That, on the First Claim for Relief, Plaintiff be awarded Defendants' profits, his damages, and the costs of this action pursuant to 15 U.S.C. § 1117(a), subject to the principles of equity;

5. That Defendants be ordered to disgorge all profits attributable to their unauthorized use of Plaintiff's image, likeness, identity, and simulated performance, to the extent authorized by applicable law and without duplicate recovery;

6. That Plaintiff be awarded punitive and exemplary damages according to proof;

7. That Plaintiff be awarded restitution pursuant to California Business and Professions Code § 17203;

8. That Defendants and all persons acting in concert with them be preliminarily and permanently enjoined from using Plaintiff's name, image, likeness, identity, or performance in advertising, merchandise, or commercial promotion without his prior written consent;

9. That Defendants be preliminarily and permanently enjoined from creating, commissioning, publishing, distributing, or commercially exploiting any artificial-intelligence-generated or synthetic depiction, movement, or performance derived from Plaintiff's identity without his prior written consent;

10. That Defendants be ordered, on terms fixed by the Court, to remove, disable, and cease distribution of the challenged advertisements and synthetic derivatives, and to direct their agencies, contractors, platforms, and account administrators to do the same;

11. That Plaintiff be awarded his attorney's fees as available under California Civil Code § 3344(a) and, if the Court finds the case exceptional, 15 U.S.C. § 1117(a);

12. That Plaintiff be awarded pre-judgment interest and the costs of this action; and

13. That Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 17, 2026

**TALENT RIGHTS LAW**

By: ____________________________
Joseph N. Casas, Esq.
Attorney for Plaintiff Jeffrey S. Stanfield